Pamela Sue KUNKEL, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–98–01236–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 8, 2001.

Rehearing Overruled May 3, 2001.

Christian C. Samuelson, Houston, for appellants.

Kelli Pool Roper, Houston, for appellees.

Panel consists of Justices SEARS, CANNON, and HUTSON–DUNN.*

## MAJORITY OPINION

CANNON, Justice.

Pamela Sue Kunkel was charged with the misdemeanor offense of driving while intoxicated. After the trial court denied her motion to suppress, Kunkel entered a plea of no contest. The trial court found her guilty and assessed punishment at one year in the Harris County Jail, probated for two years, and a $400 fine. On appeal, Kunkel contends that the trial court erred in denying the motion to suppress because the evidence at issue was the fruit of an unlawful citizen's arrest. We affirm.

## Background

At the suppression hearing, Douglas Pittman testified that he was working as a wrecker driver at approximately 2:15 a.m. on May 22, 1998, when he observed a vehicle driven by Pamela Kunkel. He stated that he saw the left two wheels of the car drive onto the center median as she was getting into a left turn lane. She stopped at the red light and, when the light turned green, she made a left turn without a signal. Pittman stated that

* Senior Justices Ross A. Sears, Bill Cannon, and D. Camille Hutson–Dunn sitting by assignment.

there were approximately ten other cars at the intersection at that time.

After completing the turn, the vehicle bumped the left curb with its tires. Pittman followed and observed Kunkel's car repeatedly bump the left curb before moving to the right hand lane and bumping the right curb. He estimated that she crossed the centerline of the road about 20 times in a quarter mile. After the turn, Pittman used his phone to call the police and report Kunkel's erratic driving. At this time, there were no other vehicles traveling in the same direction as Kunkel and Pittman.

Kunkel then slowed to about two miles per hour before turning right onto another street. She drove down the center of this street for another quarter of a mile before turning into the entrance of a complex of town homes. Pittman pulled his wrecker in behind her, blocking her car between the wrecker and the entrance gate. As she attempted to insert her key card into the reader, he exited his vehicle and took the card from her hand. When she tried to exit the vehicle, he moved in front of the car door so that she could not have gotten out without pushing him aside. He told her to remain seated and that HPD officers would arrive soon. Police officers arrived on the scene within three minutes and eventually took Kunkel into custody.

Kunkel also testified at the suppression hearing. She acknowledged a certain amount of erratic driving that night but claimed that she had dropped a lit cigarette and was trying to find it before it did damage to her car. She said that she drove down the middle of the road to her town home because the street is sunken and cracked in places.

She also testified that Pittman pulled in behind her when she was trying to put her key card into the reader for the entrance gate. According to her, Pittman grabbed her hand and pulled the card out of it. She said he screamed, "Citizen's arrest. You're not going anywhere," and he blocked her exit from the vehicle. She further stated that when she attempted to move to the passenger side to exit, Pittman started around the vehicle so she just stayed on the driver's side.

The court also heard testimony from two HPD officers on the scene. Sergeant Timothy Kubiak and Officer T.J. Allen both testified that it appeared to them when they first arrived that Pittman was preventing Kunkel from exiting her vehicle. Kubiak further testified that each of the moving violations observed by Pittman was no more than a class C misdemeanor.

At the conclusion of the hearing, the trial court denied the motion to suppress. Kunkel then plead no contest to the charges, and the trial court found her guilty and assessed punishment at one year incarceration, probated for two years, and a $400 fine.

### Analysis

■ Appellant contends that the trial court erred in denying the motion to suppress because the evidence was the fruit of an unlawful citizen's arrest. This issue presents a mixed question of law and fact that does not turn on an evaluation of the credibility and demeanor of the witnesses. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We will, therefore, utilize a *de novo* standard of review. *See id.; Loserth v. State*, 963 S.W.2d 770, 773 (Tex.Crim.App.1998).

■ Article 14.01 of the Texas Code of Criminal Procedure authorizes a private citizen to effect an arrest when a felony or breach of the peace is committed in his presence or within his view.[1] Neither side directly contends on appeal that Pittman did not arrest Kunkel. Indeed, ample evidence was introduced at the hearing to support this implied part of the court's ruling. An arrest is complete when a person's liberty of movement is restricted or restrained. *Hoag v. State*, 728 S.W.2d 375, 379 (Tex.Crim.App.1987). *See also McGuire v. State*, 847 S.W.2d 684, 686 (Tex.App.—Houston [1st Dist .] 1993, no pet.)(citizen's arrest case). It is undisputed that Pittman parked his wrecker behind Kunkel's car, trapping it between the entrance gate to the town home complex and the wrecker. He then took her key card out of her hand before she managed to open the gate, and he positioned himself such that she could not exit the vehicle without pushing him out of the way. Kunkel even testified that Pittman started around the vehicle to prevent her from exiting on the passenger side. There was certainly sufficient evidence on which the court could have found that Pittman arrested Kunkel. Furthermore, there has been no allegation that Kunkel committed a felony.

■ We therefore turn to the question of whether, when the law is applied to the facts, the conduct that Pittman observed amounted to a breach of the peace. *See* TEX.CODE CRIM. PROC. ANN. art. 14.01(a); *Guzman*, 955 S.W.2d at 89. The generally accepted explanation of what constitutes a "breach of the peace" is contained in

---

1. "A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace." TEX.CODE CRIM. PROC. ANN. art. 14.01(a)(Vernon 1981).

*Woods v. State,* 152 Tex.Crim. 338, 213 S.W.2d 685 (1948), which states in part:

Actual or threatened violence is an essential element of a breach of the peace. Either one is sufficient to constitute the offense. Accordingly, where means which cause disquiet and disorder, and which threaten danger and disaster to the community, are used, it amounts to a breach of the peace, although no actual personal violence is employed.

*Id.,* 213 S.W.2d at 687. In other words, a threat of violence to the community is sufficient to constitute a breach of the peace. *See id.; Turner v. State,* 901 S.W.2d 767, 770–71 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd).

■ What constitutes a breach of the peace is to be determined on a case-by-case basis, looking to the facts and circumstances surrounding the act. *Turner,* 901 S.W.2d at 770. Several courts have found circumstances wherein conduct suggesting that a motorist was driving while intoxicated could be classified as a breach of the peace. *See Romo v. State,* 577 S.W.2d 251 (Tex.Crim.App.1979); *McEathron v. State,* 294 S.W.2d 822, 163 Tex.Crim. 619 (Tex. Crim.App.1956); *Ruiz v. State,* 907 S.W.2d 600 (Tex.App.—Corpus Christi 1995, no pet.)[2]; *McGuire,* 847 S.W.2d 684.

■ In the present case, the wrecker driver, Pittman, testified that he saw Kunkel drive the left two wheels of her vehicle onto the center median at an intersection with about ten other cars present. She turned at the intersection and again ran into the center median, repeatedly bumping it with her tires. Then she moved to the right lane and bumped the outside curb. He estimated that she crossed the line dividing the two lanes about 20 times in a quarter mile. She

then slowed to about two miles per hour before making a turn. We find that Pittman's testimony regarding such conduct was more than sufficient to support the trial court's determination that Kunkel committed a breach of the peace and that the citizen's arrest was therefore proper. By its very nature, the conduct observed by Pittman, and the crime of which it is symptomatic, may place others on or near the roadway in imminent danger of harm.

■ The dissent contends that Pittman's testimony was insufficient to demonstrate that Kunkel was committing a breach of the peace because Kunkel committed mere moving violations and erratic driving and did not come close to actually hitting anyone. We agree that a citizen cannot arrest a motorist for individual misdemeanor moving violations. *See Pierce v. State,* 32 S.W.3d 247, 253 (Tex.Crim.App. 2000). And, certainly, there are different degrees of erratic driving; the lower range of which would not constitute a breach of the peace in most circumstances. Kunkel's behavior in the present case, however, is best described as a series of moving violations accompanied by prolonged erratic driving. The threat and danger to the community was very real.

Furthermore, the dissent fails to cite to any case wherein a court found there was no breach of the peace on evidence of DWI that was as strong as it is here. In the main cases relied upon by the dissent, *Pierce, Perkins,* and *Reichaert,* the conduct observed before the arrest can truly be described as simple moving violations or momentary erratic driving. *See Pierce,* 32 S.W.3d at 248 (swerving in front of another vehicle); *Perkins v. State,* 812 S.W.2d 326, 329 (Tex.Crim.App.1991)(speeding and running

---

2. Ruiz was stopped and arrested on suspicion of DWI but was charged with and convicted

of unlawfully caring a handgun. *Ruiz,* 907 S.W.2d at 604.

a red light); *Reichaert v. State,* 830 S.W.2d 348, 352 (Tex.App.—San Antonio 1992, pet. ref'd)(speeding and almost hitting a retaining wall). These cases are, therefore, clearly distinguishable from the present case. Lastly, Pittman's testimony that there were approximately ten other vehicles at the intersection where Kunkel drove over the median demonstrates that, despite the late hour, the area streets were not deserted and people were, in fact, threatened with harm from Kunkel's obviously impaired driving.

We find that the trial court correctly applied the law to the facts in denying the motion to suppress. Accordingly, we overrule this point of error.

In an alternative point of error, Kunkel contends that the trial court erred in failing to suppress all of the evidentiary fruits of her arrest by the police officers because the arrest resulted from an unlawful citizen's detention. As discussed above, there was ample proof presented for the trial court to conclude that Pittman effected a citizen's arrest of Kunkel and not a mere detention. We therefore overrule this point of error.

We affirm the judgment of the trial court.

HUTSON–DUNN, J. dissenting.

D. CAMILLE HUTSON–DUNN, Justice, dissenting.

Because I believe that the conduct observed by the wrecker driver did not constitute a breach of the peace, I respectfully dissent.

A survey of DWI related "breach of the peace" cases reveals a consistent pattern requiring more than simple moving violations or erratic driving to support a citizen's arrest. There must be some demonstration of actual or threatened harm to the community. In *Pierce v. State,* 32 S.W.3d 247 (Tex.Crim.App.2000), the arresting citizen, Miller, testified that he saw the defendant's vehicle overtake him and then swerve in front causing him to apply his brakes to avoid the defendant's vehicle. On these facts, the court held that the arrest was improper because "the only offense for which Miller could have arrested the appellant was driving while intoxicated [but b]efore he stopped her, Miller had no evidence that the appellant was intoxicated." *Id.* at 253.

Similarly, in *Perkins v. State,* 812 S.W.2d 326 (Tex.Crim.App.1991), the court held that speeding and running a red light were insufficient acts to support detaining the driver for a breach of the peace. *Id.* at 329, n. 4. And, in *Reichaert v. State,* 830 S.W.2d 348 (Tex.App.—San Antonio 1992, pet. ref'd), the court held that speeding and almost hitting a retaining wall were insufficient evidence on which to arrest someone for a breach of the peace. *Id.* at 352. Like *Pierce,* both of these cases involved a police officer outside of his jurisdiction and thus acting as a private citizen. Regardless, the cases are all on point because they specifically deal with the same issue as the present case, i.e. the application and interpretation of the phrase "offense against the public peace" in Article 14.01(a) of the Texas Code of Criminal Procedure.

The cases on the other end of the spectrum, wherein the courts found the citizen's arrest to be proper, further support the proposition that something more than mere erratic driving or moving violations is required. In *Romo v. State,* 577 S.W.2d 251 (Tex.Crim.App.1979), the defendant drove erratically and committed a traffic violation (speeding), but then also swerved at the arresting citizen's vehicle causing him to drive into the curb to avoid a collision. *Id.* at 252. In *Ruiz v. State,* 907 S.W.2d 600 (Tex.App.—Corpus Christi

1995, no pet.), the defendant committed a traffic violation (driving wrong way on highway), but also caused oncoming motorists to swerve out of his way to avoid a head-on collision. *Id.* at 604. In *McGuire v. State*, 847 S.W.2d 684 (Tex.App.—Houston [1st Dist.] 1993, no pet.), the arresting citizens (several wrecker drivers) actually witnessed a traffic accident involving the defendant. *Id.* at 685.

In the present case, Pittman only observed Kunkel drive two wheels over a curb, bumb the curb a couple of times, and cross the center line a few times. Based on Pittman's testimony, the police officers' testified that Kunkel committed only minor moving violations. Furthermore, there was no testimony that any pedestrians or motorists were actually in danger of being hit by Kunkel's vehicle. Pittman's testimony, therefore, does not support the conclusion, as necessary to establish a breach of the peace, that Kunkel's conduct caused anyone to be actually harmed or threatened with harm. *See Woods v. State*, 152 Tex.Crim. 338, 213 S.W.2d 685, 687 (1948). Under these facts, there was no immediate threat of danger or disaster to the community and, therefore, no breach of the peace. *See Pierce*, 32 S.W.3d at 253.

Although private citizens are authorized to make arrests when they observe a felony or a breach of the peace in progress, they are not imbued with general police powers. *See* TEX.CODE CRIM. PROC. ANN. art. 14.01(a). A police officer in the proper execution of his duties may have been able to stop and detain Kunkel that night, if he or she had observed what Pittman observed. After further investigation, the officer may then have been able to arrest Kunkel for DWI. *See Pierce*, 32 S.W.3d at 253 (evidence of intoxication obtained after the stop could not justify the stop). Pitt-

man, however, had no authority to arrest her on the basis of his observations.

Simple erratic driving and misdemeanor moving violations do not constitute a breach of the peace. In holding to the contrary, the majority opinion could be read as authorizing or even encouraging wrecker drivers, or anyone else, to follow and attempt to arrest motorists who commit simple moving violations or weave in the roadway. Such a result would cause a greater potential for violence, between the arresting citizen and the motorist, than the erratic driving or moving violations themselves. It would, therefore, be contrary to the best interests of the state and against public policy.

I believe the trial court erred in denying the motion to suppress. Accordingly, I would reverse the judgment of the trial court and remand with instructions to grant the motion to suppress in accordance with this opinion.