**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00047-CR**
_____

**KIMBERLY ANN CATALDO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 4**
**Montgomery County, Texas**
**Trial Cause No. 16-316072**

**MEMORANDUM OPINION**

Kimberly Ann Cataldo was charged by information with the offense of driving while intoxicated. Cataldo filed a motion to suppress, arguing that her warrantless arrest was unsupported by probable cause. After a hearing, the trial court denied the motion. Thereafter, Cataldo pleaded guilty. The trial court convicted Cataldo and assessed punishment at three days in jail and imposed a $750 fine. Cataldo now appeals, challenging the trial court's order denying her motion to suppress. We affirm.

1

At the hearing on the motion to suppress, the State stipulated that Cataldo's arrest was made without a warrant, after which the court noted that "[t]he burden shifts to the State." The State called Kyle Jones to testify, who explained that he is a "firefighter paramedic." Jones testified that, on the evening of July 31, 2016, he observed a black Cadillac Sedan "driving erratically" while going northbound on Six Pines Drive in The Woodlands. Jones described the traffic on the road that day as "pretty heavy. Moderate to heavy." According to Jones, he first noticed the Cadillac when it veered into the lane in which Jones was driving and the Cadillac nearly hit Jones's vehicle. Jones testified that he honked his horn, after which the Cadillac overcorrected and almost hit the curb. According to Jones, over the next quarter-to-half-mile, the driver of the Cadillac never regained complete control of the vehicle. Jones explained that, at one point, the Cadillac "stayed over the middle stripe for . . . at least 75 yards or so." Jones testified that he observed the Cadillac accelerate from forty to fifty miles per hour, the Cadillac's brakes locked up, and Jones observed the Cadillac nearly hit a marked student-driver vehicle. Jones explained that he decided to stop the Cadillac "to prevent injury from her and others around her[]," and he pulled his vehicle in front of the Cadillac in order to block it. In Jones's opinion, the driving he witnessed was reckless.

Jones testified that after he pulled his vehicle in front of the Cadillac, he got out of his own vehicle, approached the driver's door of the Cadillac, and tapped on the window. Jones explained that the driver rolled down her window and asked him "[d]o you need something?" after which he told her "[y]ou're driving all over the place. You almost hit a couple of people. Are you feeling okay?" At the hearing, Jones identified Cataldo as the person who was driving the Cadillac.

According to Jones, when he first observed how the Cadillac was being driven, he "didn't know if it was a medical emergency or what was going on[]" but he "assumed it was an intoxicated driver[]" because in his line of work, "more often than not, it is an intoxicated subject." Jones also testified that, after he first spoke with Cataldo, he could smell "positive ETOH, [the] alcohol smell that you smell on, I guess, drunk people." Jones explained that "ETOH" refers to alcoholic beverages and that he recognized the smell because he encounters it "at least ten times a month minimum" during the course of his work. Jones testified concerning his impression of Cataldo:

> She seemed kind of erratic. She was, like I got to go. Why are you doing this to me? Just kind of, I don't know, out of sorts. She had a glazed-over look in her eyes. I could tell right away that she wasn't alert and oriented, not completely.

Jones explained that he reached into the Cadillac and put it in park, because he did not want her to leave or to pull forward and hit another vehicle. According to Jones,

3

he told Cataldo he had called the police, after which Cataldo asked Jones to drive her home. Jones also testified that Cataldo told Jones that she was not drunk although she had had "a couple of glasses of wine[.]" Jones testified that after a few minutes, Cataldo put the Cadillac into drive and hit the gas, so he reached in and put the car back into park because, if Cataldo had driven forward, Jones thought she would have hit his vehicle with his family inside. Jones explained that he saw no keys in the Cadillac, and he assumed the electronic key was in Cataldo's purse, so he took her purse out of the Cadillac and placed the purse on the ground in an attempt to prevent her from driving away.

Jones agreed that it was "[a]bsolutely[]" necessary for him to stop Cataldo and to take her purse out of the car to prevent injury or death to Cataldo or to others around her. On cross-examination, when asked whether he was making a citizen's arrest that night, Jones replied "I wouldn't say that. I was just trying to help out." He explained that he understood a citizen's arrest to be "where a civilian actually detains or approaches someone and calls the police officer and, hopefully, they're apprehended at that point." Jones testified that he called the police to investigate the situation. When asked again on cross-examination whether he was making a citizen's arrest, Jones replied "Sure. If you want to put it like that, yes, sir."

4

At the conclusion of the suppression hearing, and after reviewing the evidence and relevant law, the court announced that it would deny the motion to suppress "finding that this was a lawful citizen's arrest." The trial court denied the motion without issuing findings of fact and conclusions of law, and neither party requested findings of fact and conclusions of law. Cataldo pleaded guilty, and the court convicted her for driving while intoxicated and assessed punishment at three days in jail and imposed a fine of $750. Cataldo timely appealed from the order denying her motion to suppress.

<u>Standard of Review</u>

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447-48 (Tex. Crim. App. 2010). We review the trial court's factual findings for an abuse of discretion, and we review the trial court's application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, and a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *Valtierra*, 310 S.W.3d at 447; *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v.*

5

*Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

In reviewing a trial court's ruling, the appellate court does not engage in its own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review purely legal questions de novo as well as mixed questions of law and fact that do not turn on credibility and demeanor. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Crain*, 315 S.W.3d at 48.

In the absence of any findings of fact, either because none were requested or none were spontaneously made by the trial court, an appellate court must presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (citing *Ross*, 32 S.W.3d at 856); *see also Aguirre v. State*, 402 S.W.3d 664, 667 (Tex. Crim. App. 2013) (Cochran, J., concurring) ("in the absence of specific findings, an appellate court's hands are tied, giving it little

choice but to 'view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record'") (quoting *Ross*, 32 S.W.3d at 855). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013); *Ross*, 32 S.W.3d at 855.

"Citizen's Arrest"

Texas law expressly provides that a peace officer or "any other person" may arrest an offender under certain circumstances, but the right to make a so-called "citizen's arrest" is not unfettered.[1] *See Miles v. State*, 241 S.W.3d 28, 39 (Tex. Crim. App. 2007). Article 14.01(a) of the Code of Criminal Procedure provides that "[a] peace officer *or any other person*, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is

---

[1] The term "citizen's arrest" refers to "an arrest of a private person by another private person[.]" *See Citizen's Arrest*, Black's Law Dictionary 116 (8th ed. 1999).

7

one classed as a felony or as an offense against the public peace." Tex. Code Crim. Proc. Ann. art. 14.01(a) (West 2015) (emphasis added); *Miles*, 214 S.W.3d at 39. In order to satisfy the requirement that the offense be "'committed in [the citizen's] presence or within his view,'" what the individual observes must be enough to establish probable cause that a crime is being committed. *See Morris v. State*, No. 02-16-00196-CR, 2017 Tex. App. LEXIS 1367, at *4 (Tex. App.—Fort Worth Feb. 16, 2017, no pet.) (mem. op., not designated for publication) (quoting *Garner v. State*, 779 S.W.2d 498, 501 (Tex. App.—Fort Worth 1989, pet. ref'd)); *McGuire v. State*, 847 S.W.2d 684, 686 (Tex. App.—Houston [1st Dist.] 1993, no pet.).

Private persons who are not peace officers may make an arrest only for a felony or for a misdemeanor that is "an offense against the public peace." *Miles*, 241 S.W.3d at 40. The Court of Criminal Appeals has explained that "a citizen may make a warrantless arrest of a person who commits a misdemeanor within the citizen's presence or view if the evidence shows that the person's conduct poses a threat of continuing violence or harm to himself or the public." *Id.* at 42. Whether the circumstances constitute a breach of the peace will be determined on a case-by-case basis, looking to the facts and circumstances surrounding the act. *Kunkel v. State*, 46 S.W.3d 328, 331 (Tex. App.—Houston 14th Dist. 2001, pet. ref'd) (citing *Turner v. State*, 901 S.W.2d 767, 770 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd)). The

8

Court of Criminal Appeals has explained that a citizen's arrest of another driver who is driving in a reckless manner may provide sufficient circumstances of a breach of the peace to support an arrest by a private person where a motorist's conduct suggests the driver is driving while intoxicated. *See Miles*, 241 S.W.3d at 42-44 (explaining that a citizen's arrest for reckless driving while intoxicated is proper under article 14.01(a)); *Romo v. State*, 577 S.W.2d 251 (Tex. Crim. App. 1979) (citizen's arrest of a motorist was proper under article 14.01(a) where motorist drove erratically at a high rate of speed and, after the stop, the citizen noticed the motorist smelled strongly of alcohol); *McEathron v. State*, 294 S.W.2d 822, 823-24 (Tex. Crim. App. 1956) (upholding citizen's arrest for driving while intoxicated when citizen saw defendant drive at a high rate of speed, drink from a bottle while driving, strike the esplanade three times, and run red lights); *see also Kunkel*, 46 S.W.3d at 331-32 (citizen's arrest was supported by defendant's "series of moving violations accompanied by prolonged erratic driving" that created a "very real[]" threat of danger); *Ruiz v. State*, 907 S.W.2d 600, 604 (Tex. App.—Corpus Christi 1995, no pet.) (where a citizen arrested a motorist he observed driving the wrong way at high speed and citizen believed the motorist was a drunk driver, the court concluded the motorist was committing a breach of peace and the citizen was authorized to stop him); *McGuire*, 847 S.W.2d at 686 (upholding citizen's arrest as supported by

citizen's direct observation of commission of the crime and explaining that "[d]riving while intoxicated and failing to stop and give information are offenses against the public peace[]"). A citizen may not arrest a motorist for misdemeanor moving violations. *See Pierce v. State*, 32 S.W.3d 247, 253 (Tex. Crim. App. 2000).

Nevertheless, whether an arrest is made by a private person or by a peace officer, if the arrest is unlawful, evidence obtained as a result of the unlawful arrest is subject to suppression in accordance with the exclusionary rule. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005) (excluding evidence unlawfully obtained "by an officer or other person"); *Miles*, 241 S.W.3d at 36; *Jenschke v. State*, 147 S.W.3d 398, 400 (Tex. Crim. App. 2004).

<u>Analysis</u>

Cataldo argues that the trial court erred in denying her motion to suppress because the State failed to present testimony of the arresting officer and, therefore, there was no evidence that the arresting officer had probable cause to support the arrest. Cataldo argues that "[n]ot only did the Texas Peace Officer that arrested the Appellant without [a] warrant not testify, he or she is never identified in either the Clerk's record or the Reporter's Record." Cataldo also argues that Jones provided no testimony at the suppression hearing regarding what he told to the arresting

10

officer. Cataldo's brief argues that "[a] detention by a citizen is merely a temporary detention that may lead to an arrest by a licensed peace officer."

In this case, however, the trial court explained on the record that it found that Jones had made "a lawful citizen's arrest." Jones testified that he personally observed Cataldo driving erratically and nearly hit both his own vehicle as well as a marked student-driver vehicle. Jones personally observed Cataldo to have "a glazed-over look in her eyes[]" and not to appear alert or oriented. Jones testified that he smelled alcohol on Cataldo and that Cataldo told him she had been drinking. As a paramedic, Jones had regular professional experience with intoxicated persons. Jones explained that he blocked Cataldo's car, put her car in park, and took her purse to prevent her from hurting herself, Jones's family, or any other nearby persons. Therefore, we conclude that the trial court did not err in finding that Jones made a warrantless citizen's arrest of Cataldo and that such was lawful because Jones personally observed Cataldo commit a misdemeanor within his presence or view that was "an offense against the public peace." *See Miles*, 241 S.W.3d at 42-44; *Romo*, 577 S.W.2d 251. The evidence at the hearing established that Cataldo's conduct posed a threat of continuing violence or harm to herself or the public. *See Miles*, 241 S.W.3d at 42; *see also* Tex. Code Crim. Proc. Ann. art. 14.01(a).

11

Article 14.01(a) states that "[a] peace office *or* any other person[]" may arrest a person without a warrant for a felony or an offense against the public peace provided offense is committed in the presence or view of the person making the arrest. Tex. Code Crim. Proc. Ann. art. 14.01(a) (emphasis added). Because we agree with the trial court that Jones made a lawful citizen's arrest, we need not determine whether any peace officer had probable cause to arrest Cataldo. *See* Tex. R. App. P. 47.1. We find no error by the trial court in denying the motion to suppress. We overrule Cataldo's issues on appeal, and we affirm the trial court's order and judgment of conviction.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on July 11, 2017
Opinion Delivered August 2, 2017
Do Not Publish

Before McKeithen, C.J., Horton, and Johnson, JJ.